We will now hear argument in the fields versus Option One. Please strike. Implies the court, I'm David Scholl, I represent the opponent, Margaret Fields, or her heir, which Fields is deceased. I'll refer to her as the father. Excuse me, the clock is wrong. How many minutes per court? Fifteen per court. Fifteen on for either side, for both sides. Oh, wait a minute, I say ten. Oh, forgive me. No, it's ten minutes. My bad. I'm sorry, because we're splitting with the amicus. The amicus is going to take five minutes of my time. My apologies. Okay, my apologies. But I would ask for two minutes for both. Granted. Thank you. You're all over these cases, Mr. Scholl. I've been reading them over the last few days, and I see your name popping up all over the place. I suppose you are a real expert. Well, I just wish I were successful in more of them, and I hope that I'll be successful in this one, because it is key to many other cases that we have. Your Honor, the issue is really whether an open charge in the title insurance has to be disclosed as a finance charge by the lender. This is a case in which the borrower, interesting enough, her birthday is today. It would have been today. She would have been 85 today, March the 6th. She's passed, and this estate is pressing this claim? Yes, her heir is Ms. Guyton. Lorraine Guyton is the administrator of her estate. Why wasn't the title company a defendant in this case? Well, Your Honor, we certainly could have raised a truth-in-lending claim against the title insurance company. There could have been claims made, but in these cases... I'm not saying it should have been, but it's curious, because many of these cases do have the title. Well, particularly since your argument is that it doesn't make any difference what the lender knew. It's what the title company knew. I wonder why the title company, who is alleged to be the bad actor here, in the sense of not providing the appropriate level of fee, it wasn't in the mix. They certainly could have been a party, but we wouldn't have had a truth-in-lending claim against them, because they are not one of the parties that has to give disclosures under truth-in-lending. And truth-in-lending becomes very significant here, because the parties agree, basically. What happened is that this is a home. It was a very high-cost loan, which Ms. Fields was refinancing, two mortgages, one of which she had received in 1999, just about two and a half years before. It was such a high-cost loan, it was just under the Home Ownership and Equity Protective Act provisions, which are 8% prepaid finance charge. Then it becomes a so-called HOPA loan. In this case, a little bit under. And the minute that you put on, even with rather small title insurance overcharge of $211,089, that triggers a higher finance charge, and we put it within the scope of HOPA. And that's key here, because the lender admits they did not give the HOPA disclosures, and that is a material disclosure violation. And therefore, it sets in motion the rescission rights of the debtor, which would clearly exist if, in fact, the debtor is correct. You say that the Truth-in-Lending Act imposes no duty on a lender to seek out information to ensure that a consumer gets the best title insurance rates. We can say that, Bernie, yes. But help me understand how what you do argue for is effectively different from that. Because what you say is that regardless of what the lender knows, if they don't get the information right, they're liable. They can have the loan rescinded. So what's the practical distinction between saying, well, the Truth-in-Lending Act doesn't make them a guarantor, and saying, but if they're wrong, it doesn't make any difference what they knew or had reason to know, they're on the hook. Well, because Truth-in-Lending does make requirements of lenders. Lenders have to do some investigation. Well, doesn't it make them a guarantor then? I mean, isn't that the practical effect of the position you're arguing for? Well, not absolutely. There are defenses that lenders have. For instance, they can correct it very quickly. They can also raise a good faith defense. They can prove we put in systems that were adequate to protect us, but we just made a mistake. They didn't do that in this case. They simply said, we're not liable for this. And instead, the onus is put on, she was 78 at the time she made the loan, to tell the lender that she's being overcharged. Well, doesn't she have some burden? Wouldn't she have had, forget the age, have some burden, some initial burden? Well, to tell the lender that she comes overcharged for title insurance? I mean, this is a lady who wouldn't even know what title insurance was, and she never met the lender. This was a case that the loan was entirely arranged by a broker, and it was done in her home. She never saw the lender. Well, wouldn't her, one could argue her, that was not, by the way, that was, you'll see. Wouldn't that initial burden, if she has any, have been met by, for example, the settlement statement that appeared at closing, which showed two prior mortgages? And perhaps that would shift the burden of production to the title company to come forward, or to the lender, to come forward and show that the charges were not unreasonable. No, no mistaking that. And of course, they get, all they do is look at the settlement. So she has some burden. There is some evidence that she, she can't just come in and say, I should get the refinancing rate. Well, she would never do that, because, of course, again, she wouldn't know, but there are regulations that are, I'm sorry, under the manual, though, I'm really puzzled by this, under the manual, the burden that you're claiming is unfair to put on your client is put on the client under a reissue situation under 5.3 of the manual. Can you explain for me why there's some difference between reissue and refi, such that that evidentiary burden is included in 5.3, but not in 5.6? Well, I would just say that the 5.3 doesn't actually put it on the borrower. That's right. It says evidence of the earlier policy. I would say just looking at the title report, I'm sure that the lender had access to, you could say there was an earlier loan within three years. Well, but if someone has to come forward, there's a burden of producing some evidence in 5.3 that does not exist, at least as I read 5.6, it doesn't exist there. Can you explain the dichotomy there? Well, I think that, I mean, I don't know why the wording is the way it is, but I believe when a loan is three years old, it's not very old. It's pretty obvious that that situation exists. If it's 10 years, it takes a little bit more research to look back, and maybe in that circumstance, there has to be a little bit more presented to the lender. The manual was amended, or was it? It was pre-amended, yes. In 205, so that now that both that's to 5.3 and 5.6, there must be a showing, and now you have a new 2.8 and 2.9. You didn't have that before. It still doesn't address, though, who has the burden to produce. Well, they can look at anything. If they can see there's a prior loan, that's enough that they've got to look a little further. But it doesn't address who has the burden. And when you say it shows they had a prior loan, as I understand it, there's three things that have to be shown. Yes. To get the refinance rate. That there was an insured prior mortgage. Within three years. Within three years. That there's no change in the fee simple ownership, and that the property bounds, I guess, or the property interest itself remains unchanged, right? There's no change. So what is it about seeing the settlement sheet all by itself that would tell a lender, wait a second, you've got all three of those things. I can understand if you saw a settlement sheet and you said, okay, I can see there was a mortgage within the previous three years. How does that tell the lender that the insurance received in connection with that was insured? How does it tell the lender  And how does that tell the lender that there's been no encumbrance or other change in the property in the interim? Well, it tells the lender that, I mean, it is, I would say, an unusual situation where there would be a change in ownership or a change in the moots and bounds of the property. When you have one loan with one party and then two or three years later, you have another loan with the same party. You would think they would at least investigate that and determine whether there is any change. I mean, here there is none. I don't think anybody suggested that there was any change whatsoever. Here there is none. What's your record for that? That's one of the challenges I've got with this case is this case went to trial before the bankruptcy court on a stipulation of facts. It's been the only statement in that stipulation of facts that I saw that had to do with the entitlement to this special rate was in, I think, paragraph 24 in the stipulated facts. And all that says is, with respect to title insurance, the debtor was charged the basic rate, the manual of the title insurance rating bureau fixed the rate for refinance and substitution at the time of the loan, the amount of 544.86. She got 756.75. That's it. How are we supposed to, on the record in this case, say, well, that bankruptcy court was clearly erroneous? Well, because I don't think that you have to make that evidentiary finding, but there's also in the record that the prior transaction was insured. There's title insurance in the prior transaction. Where is that in the record? Because we have to, don't we have to, doesn't the bankruptcy court, and don't we have to look in what the lender knew or should have known at the closing, not at the trial a year or two later, and not facts stipulated to as to what had been. But if we're looking, if the lender has to, if we need to assess or find knowledge on behalf of the lender, we have to look at it during the time frame of the closing, don't we? Well, I don't know that the lender has to have that knowledge, though. It's just like the issue of the notary fee, which was also an issue. Who's ever going to know then what the right rate is? I mean, your position in your reply brief, your entire reply brief seems dedicated to the principle advanced by Philadelphia Unemployment Project that it has, the lender can be stone ignorant, makes no difference whatsoever, that the only thing that matters is that the number's wrong, and then they're liable, they're on the hook under the Truth in Lending Act. That's the position you've taken, right? That's, yes. And where do you find that in the law? Because the lender has the disclosure, the violating duty to make sure that those disclosures are accurate. Do you have any case law from any jurisdiction that's ever said that it's irrelevant what the lender knew or should have known? Well, most of the decisions, the Johnson case that we relied on primarily here, it said title insurance is not a reasonable charge, and in fact, it's in excess of what the manual provides. The court didn't go back and try to determine, you know, did the lender know or didn't the lender know? The court assumed that you have to apply the manual that the lender certainly know about that provides that in certain circumstances, you're entitled to... There's a duty, you say, to inquire, right? Yes. So therefore, there is really a knowledge requirement. I don't know, because once you inquire, you have the knowledge. Why would a duty of inquiry exist if, in fact, the knowledge level's irrelevant? Well, I think that what happens is that the lender gets enough facts that the lender can certainly know there's very likely to be a situation that is covered. I don't think the lender can close their eyes and say, well... That's why I said to you, with the settlement statement here, you had evidence of two prior mortgages. It did not say whether the last one was insured, but at least that was... The stipulation, Your Honor. I'm trying to find some specific... But the stipulation didn't deal with that in terms of at the time of closing. No, the stipulation... Well, it doesn't say it's at the time of closing, but it does say that the loan was insured. Sure, you know a couple of years later the loan was insured. But this... Wouldn't this be enough to put... to give the lender or to lay on the lender a duty of inquiry? And doesn't this go with your argument that she has no way to show that she's entitled to the rate, you know, refinance rate as opposed to the basic rate. But once this information goes to the lender, the lender can very easily establish that she is entitled. But she has to make some initial showing, doesn't she? What showing could she make? I mean... She did it here, didn't she? That's an easy one. Say yes. Yes. She did it here. All right. She certainly... They knew that she had a prior loan within three years. And they knew that she had this... There's no reason to think that she changed... They knew she had a prior loan. They didn't know much about it, but they knew there were two prior mortgages. And of course, that as well. So that takes it out of the bankruptcy court opinion where he said there was no evidence of anything. Isn't the point here that the title insurer is the one at the table? I mean, the title insurer is acting, I guess, as the watchdog for the lender when it comes to looking at the settlement sheet. Well... I mean, the lender's never at the table, almost never at the table in these transactions. These types of loans, the lender's never at the table. The lender had nothing to do with the loan. Matter of fact, the broker sets the whole thing up. There's no communication whatsoever. Mrs. Fields doesn't know who the lender is. There's no way she could tell the lender, lender, you ought to give me a better title insurance. So she knew what title insurance was. So who at closing is responsible for vetting the sheet to make sure the appropriate charges are on there? Is it the broker? Is it the title insurance company? Or is it the poor borrower who knows nothing, who looks at the settlement sheet and sees a whole ass of numbers and letters? Well, ultimately, it falls, it has to, on the lender because the lender is the one that's in those quarters. The lender's not at the table. Who at the table? Maybe your answer is no one at the table. You're saying that under federal law, it puts the onus on the lender even though they choose not to be at the table. See, one of the things that's happened in loans, and this is a perfect example of it, is the lenders delegate everything to everybody else. They never even show up. And they do so at their peril. Indeed. And matter of fact, they, of course, know enough to at least know what areas that ought to be looked into. But here, they're just out of the picture. And, you know... But here, they're the only defendant. Well, because they're the ones that have other tricks in lending, the disclosure. Let me ask you this. Responsibilities. This is your reply brief at 7. The overcharge was not made by the lender, but by the title company and its agent. These parties, having conducted their own investigation in the process of writing the title insurance, knew or certainly should have known that they were charging an excessive rate. Now, that's the quote. How... Where is it in this record that the title company and its agent did what they presumably, according to you, did and knew or should have known that they were charging an excessive rate? I'm not arguing with you about what the ordinary case is or anything like that, because, indeed, I'm going to be asking you and your colleague from the Philadelphia Unemployment Project some questions about that. Judge Berry will permit me. I know we're a little over time here. But is there any record at all here about the investigation that the title company undertook or what they knew or didn't know or that they should have known that they were charging an excessive rate? What's your position on that? There's a title policy that they do. They do a title policy. They certainly know from that about the prior mortgages. They always look up the prior mortgages because they have to know that so they have to know who's going to be paid off. And they can see there's a prior mortgage within three years. So what you're saying is... 99.9% of these are insured, title insurance. And, of course, they stipulated here this one was. So the position, I think I understand it is, there's a way things usually happen and this court should know the way things usually happen. And even though there's no record of how they actually happen in this case, we should take judicial notice of how they usually happen. And on that basis, we should say, even though there's nothing in the record, the title company here should have known all three things were satisfied and that the refinance rate was applicable and that the lender is on the hook for what the title insurance company should have known. Am I following you right? Not quite that bad for the level of scrutiny. I mean, the manual says that these three things are done, you're entitled to a lower rate. It doesn't say you have to prove it to the lender. It doesn't say you have to prove it to the title company. Where is it in this record that those three things were done? In this case, where is it in this record that those things were established as a matter of fact? Right, the fact that there was title insurance in the prior loan is... I couldn't find the specific paragraph, but I know there is a specific paragraph in the stipulation. They agreed there wasn't a sure transaction within three years. So that was met as far as changing the ownership and the fact that... Yes, it's in paragraph seven of the stipulation. Yes. Thank you, Your Honor. You're 100% correct. I would suggest that the fact that the ownership might have changed or that the meets and bounds would have changed would have been very unusual and that... Unusual. So you want us to say that's unusual, so we'll assume that it wasn't the case. Because it would have to be an assumption since there's no record, right? There's no record that specifically says that, but no one's ever doubted that these conditions are in fact met. Well, I can say it's undisputed. No one's ever said that Mrs. Fields wasn't the owner in 1999. No one's ever said that Mrs. Fields changed the meets and bounds or that they changed it in any way since that prior transaction. And it would take very little investigation to determine that there isn't really any change in any of those significant situations. And I think that that was obvious to the title company and obvious to the... And your position is at the end of the day, it was easy for them to do it and almost impossible for you to do it. We'll get you back. We'll get you back in rebuttal. Okay, I'll be here. And thank you. May it please the court, I'm Erwin Trouts. I represent the Philadelphia Unemployment Project, the amicus curiae. In this case, I appreciate the court allowing me to participate in this argument. Your honors, you've been speaking about the record. There are several things that are in the record which are obvious and which could be deferred from the evidence that's in the record. But the most important point that I'd like to make is that this is a question about burdens and account, allocating burdens of proof under the Truth in Lending Act. And there's been a great deal of confusion about who the parties are in this case. This is a case not against a title insurance company. And the record was not developed for a case against a title insurance company. This is a case against the lender under the Truth in Lending Act. Now, before I speak about the Truth in Lending Act, let me just point out some things about what was in the record. As Judge Barry rightly pointed out, the stipulation in paragraph seven provides that a title report produced in connection with the loan indicates that prior mortgages from Mellon Bank, indicating the date and commercial bank, indicating that there was a prior mortgage within three years. And the plaintiff obtained title insurance on the home in both of these cases. Yeah, but that's not on the settlement. That's not on the settlement sheet, no. And the settlement, not the stipulation, was what was there at the time the disclosures were or were not warranted. And that's irrelevant. And I'll tell you why it's irrelevant. I thought that the Truth in Lending Act had to do, maybe, had to do with what had to be disclosed at or about the time of closing. At or before. Before, the three days before closing. Three days before. So I'll tell you, whatever you stipulated to at the trial doesn't address that time frame. Yes, it does. What was available at the time of, at or before the time of closing? At the time of closing, these facts were true facts. Now, I'm not talking about... I'm not talking about true facts. What was disclosed? What did the plaintiff have that would have put whoever on notice that something had to happen? And that's my point. And what did she come forward with other than the settlement statement, which doesn't even give the dates of the mortgages, just lists two prior mortgages? And that is what is irrelevant. The lender knew at the time she applied for a mortgage that she was the owner of the home, that she was applying for a mortgage. The court below, the bankruptcy court in particular, says that the Truth in Lending Act, in order to prevail and in order for a lender to properly disclose the finance charge and the amount financed and the APR,  the HOPA points and fees, there's an obligation on the part of the consumer to just make certain disclosures to the lender. There is nothing, nothing in the Truth in Lending Act that imposes that obligation on the borrower. The Truth in Lending Act is a specific, is a strict liability statute. And the... So what you're saying is that the lenders are guarantors because if they've got it wrong, they're in for rescissory damages or they're in for statutory damages. But if they've got it wrong, it doesn't make any difference why they got it wrong. It's irrelevant. If they got it wrong, they're on the hook. They have two defenses that are in the statute and they are bonafide error defenses. There are different versions of the bonafide error defense which is found at 15 U.S.C. section 1640 A and B. They have to prove... And Mr. Shum pointed those out. We know what they are. But as a practical matter, am I correct that your position is that it doesn't make a difference because what they know and what they don't know, they're on the hook and that in effect makes them a guarantor of what the title insurers say. No, see, here's the thing. This is not a transaction between Ms. Fields and the title insurance company. Ms. Fields was not the purchaser of title insurance here. The mortgage company was the purchaser of the title insurance. They went out and they engaged, in addition to a whole bunch of other vendors, a title insurance company to provide them with a service. They negotiated with that title insurance company to pay for that. Now under the Truth in Lending Act, they have the right and we can see they have a right to negotiate whatever unreasonable rates they want to. They can hire a lawyer to sit in the settlement and pay him $10,000 an hour, even though the going rate is $200 an hour. And they can hire a title insurance company and pay whatever title insurance company asks for them to pay. Their obligation is to determine, and this is the obligation that's specifically imposed on them by the Truth in Lending Act and it's specifically articulated in the legislative history regarding the HOPA provisions. It is their obligation to determine and to justify that their fees and costs, that their points and fees under the HOPA provisions are reasonable. All right. I'm sure I have your argument on that, Mr. Trous. Here's the problem I'm having. You say in your brief that the amicus urges this court to hold that a consumer has no duty to present evidence of a prior insurance policy as a condition of being entitled to the best applicable rate. I think it's fair to say your position would also be that the consumer has no duty to show that the boundaries or property interests haven't changed and the consumer has no duty to show that the ownership hasn't changed, right? Consumer has no duty. That's your point, right? No. The point is that the consumer has no burden at trial of going forward with evidence that the charges were unreasonable. Well, aren't you saying the exact same thing? I have no responsibility to come forward with anything. Aren't you saying, in effect, Mr. Trous, that we want this court, Philadelphia Unemployment Project, wants this court to rule that consumers have no duty in order to win a Truth in Lending Act claim, have no duty to come forward with anything? No. Don't they have a duty to at least allege a colorable claim? We have a duty to allege a claim. We have a duty to prove... A colorable claim. We have a duty to allege a colorable claim. We have a duty to show that as a matter of fact, the facts existed that would have entitled her... That it was an overcharge. This is like, take a simpler case. I mean, I don't know if it's still the case. Pennsylvania used to have a usury rate. You can't charge above a certain percentage. If someone brings a case, I believe you don't need to prove that the lender knew at the time the usurious rate was charged that that violated Pennsylvania law. That's correct. But you do have to show at trial that if the usurious rate is 12%, you have to prove that the lender charged 13%. As I understand your argument, you're saying your burden at trial here was to show that this rate was unreasonable. And the way you do that is by showing that Ms. Fields was entitled to the refinance rate. The way we do that is by showing at trial that she was in fact the owner of the property, that she gave the prior mortgages from which a court can infer that title didn't change. If she's the same person giving the mortgage almost eight years ago, 10 years ago and three years ago, it's the same person. The court can infer from that. And there was title insurance. She's proved that she was entitled to that lower rate. Isn't Judge Jordan right then that if that's what you need to prove at trial, but you don't need to prove that at the time they're sitting around the settlement table, then this statute really is a strict liability statute. The statute is absolutely... It puts a tremendous burden on the lender and the lender isn't even at the settlement table. I assume your answer to that is tough luck for the lender. If the lender wants to be careful here, then it ought to make sure it's at the table or it makes sure that its vendors, the broker, the title insurance company, scrutinize this so carefully that they don't make these kinds of mistakes. The settlement table is not when all this happens. What we're losing sight of is this is a truth and leniency statute under which the lender, beginning at the date the application is made, the lender has disclosure obligations. And you're saying this is a strict liability, right? I'm not saying it. The Supreme Court has said it. This is a strict liability statute. That issue is here, but that was not presented to the bankruptcy court, that issue. It was not argued below. And it's contrary to what your colleague argued as Judge Jordan pointed out. He's arguing known and should have known. I mean, lawyers don't typically argue that defendants knew or should have known when they have a statute that says you're strictly liable. Why would you hold yourself to a higher evidentiary burden if it's a strict liability statute? I think part of the problem in these cases is that there has been confusion other than judge. In fact, you say the chief judge was confused, Chief Judge Bartel in the district court opinion. And you're saying confusion here. And that raises in my mind, if part of the confusion isn't that these things were never litigated in this case. These things were never a part of the record in this case. There are 15 class actions by your count in which these issues are being litigated, aren't they? Not these issues, the class actions. The class actions have to do with actions against the title insurance companies. They have to do with the burden of the title insurance company. What has to transpire between the title insurance company and whoever is getting title insurance from that company? The obligations under the Truth in Lending Act are discrete disclosure obligations. Well, let me ask it this way. Maybe this is a better way to ask it. If we came down with the ruling that you're pressing, that there is, and I'll quote you again here, a consumer has no duty to present evidence of prior insurance policy as a condition of being entitled to the best applicable rate, what impact would that have on 15 pending class actions in federal and state court in Pennsylvania? None. None? It wouldn't affect the interests of the title insurance companies that are, I'm guessing, duking it out pretty hard in 15 class actions? A presidential opinion saying that is a matter of law would have no impact on those cases? No, because this is not against the title insurance company. Well, that's clear, but the rule you want, that's what I'm asking about. The rule I want is a rule under the Truth in Lending Act, not a rule under the rate manual. The rule I want is a rule under the Truth in Lending Act, and it's not a new rule. The bankruptcy court judge cited and quoted the legislative history on the HOPA provisions regarding this. What we're talking about is a burden at trial. If the lender had come in with evidence that it, in fact, did look into what rate it was entitled to, it examined it and said, we were entitled to this higher rate, and that's why we disclosed this as, we were only entitled to the higher rate, and that's why we disclosed this as being reasonable under the Truth in Lending provisions and under the HOPA provisions. Then the burden would shift to the debtor or the consumer to show that, in fact, that was incorrect. This is a question of burdens at trial, and under the Truth in Lending Act, and this is not, this is clear under the Truth in Lending Act. Under the Truth in Lending Act, with respect, in particular, to the HOPA provisions regarding points and fees, in 226.32, it is the obligation, it is the burden at trial of the lender to justify each fee and point that they wish to exclude from the points and fees calculation that determines whether there's a HOPA violation. And two other points if I might. Quickly, because I'm going to have to cut you off. We're going much too long. One is that all this does not, as I started to say, all this does not, does not start at closing. The obligation to make the proper disclosures is at least three days before closing, because the HOPA disclosure has to be before closing. And the first disclosure has to come early on when the loan's originally applied for. The other thing is that anyone, anyone looking at this loan at all, and the mortgage company, if they looked at the prior mortgage that they were paying off, would see from that prior mortgage that there was prior title insurance at the time of this transaction, because stamped on the title insurance policy is the name of the company that was the title agent that did the search, just as in this case at Act 232, I believe it is. If you look at the mortgage in this case, the name of the abstract company involved in this case is stamped on the front. And this court can take judicial notice of that, I believe, because this is a, this is something that is off record, that is available. No, we have the former title insurance policy in the record of this case. We don't have the former title insurance policy in record, but you don't need the title insurance policy for a lender to know that this was an institutional lender, that it was, the prior mortgage was held by an institutional lender, and that there was a title abstract company involved in the prior settlement. Thank you. Mr. Fort. May it please the court, Earl Fort Blackrum for the appellee option one. I think it's important to point out this is a case where the basic rate was charged. It is in a situation where some extremely high rate was charged. What Judge Fox focused on was what is the burden of proof? Well, that's a terrible way to start off because I mean, this is a rate that she could, she could have afforded. This is the evidence in the case. She could have afforded the refinance rate, but she couldn't afford the basic rate. So it was enough to tip her over into bankruptcy. So, you know, that's not a great way to start off saying it wasn't a lot of money. No, this is a lot for her. Well, I agree with that. I agree with that. But I wanted to respond to counsel's remarks about the fact that any rate can be charged because that wasn't what was done here. The manual rate was charged. The parties agreed with that. Judge Fox focused on what the actual record was and whether or not there were sufficient facts to meet the burden that the plaintiff had as a civil litigant. And he simply concluded in looking at the record that there wasn't enough to carry that burden. For example, Mrs. Fields didn't remember anything about any of the documents she'd received from option one. She didn't remember anything about her prior mortgages or prior loans. She didn't know if she'd had even an additional mortgage on the property that she couldn't recall. And all that's relevant if she has an evidentiary burden. But where in 5.6 of the manual does she have an evidentiary burden or anyone have an evidentiary burden? Where is the evidentiary burden? It's not written into the manual. I'll agree with that in 5.6. I think arguably, well, you could take the position that what was in 5.3... Which isn't in the record, by the way, is it? No, it's not. It's not in the record. And the Turnpike Manual applies to the title insurance industry, which isn't here. We're the lender. This is a lawsuit in bankruptcy court. It's a civil action. And as Judge Fox pointed out in footnote 16 of the decision, this is a claim against the lender. It's not a claim against the title insurance policy company. I wonder why PUP is even here. They asked for clarification for the title insurance industry in their brief. They now say they're not asking for that. If this case is related to the title insurance cases, PUP seems to be denying it. I'm not sure I understand exactly why they're here. The plaintiff could have taken the deposition of the title agent. The plaintiff didn't do it. But the plaintiff's burden, it's not the plaintiff's burden to show that she was entitled to the refinance rate and she didn't get it. It is her burden to show that if she's going to take the lender to court. At trial. At trial. That's correct. And your argument, I thought, was that 5.3 is in play here. And that because 5.3 is involved, she has some, or someone has an evidentiary burden to come forward and show these things. Okay, well, let me explain. I didn't think I was clear. The amendments, which don't come into play here because they were in 2005, add a list of things that need to be shown in order for people to get the refinance rate. Query whether... I have a question. Let me interrupt, or I'll have to say. For things to be shown, who's got to show it? The title insurance company can rely on those. And there's a laundry list of things in the alternative. I'm not getting an answer to my question. Who, and I apologize, I might not be asking it clearly. Under the amended version or under the previous version of 5.3, which is not in the record, but you want to answer the question, great. What's the... Who's got to come forward and show what it says should be shown? Well, I think the borrower has some burden to do that with this particular issue of... Is that a custom and practice? How would we know that? I don't know. There's no expert testimony in the record about what the custom and practice is. But where's the borrower's duty come from? Where's the borrower's burden come from? Because they're the plaintiff and they're suing in court. Their burden is to show they were charged the wrong rate, not that the lender knew it was the wrong rate at the time of closing. I'm with you on that. In order to prove up the cause of action, Ms. Fields needs to walk into court and say, TILA was violated and the reason TILA was violated was that I was entitled to a lower rate. If I was charged the refinance rate as I was entitled to... Correct. ...then it sets in motion a trigger that makes this an illegal loan under TILA, right? It could, yes. Could or would? Well, it would. Okay. So she needs to prove that she was entitled to the refinance rate, correct? Okay. And I thought your argument was she's not entitled to the refinance rate. She hasn't shown she was entitled to it. She hasn't shown she's entitled to it. She didn't show she was entitled to it because as Judge Fox noted, okay, first of all, there was no prior title insurance policy produced. The only one in the record is the one for the new loan. There were no title reports produced. They're not in the record. Judge Fox also noted that she hadn't shown that the fee simple and the title had not changed since the time of the last mortgages. She didn't show those things at trial or she didn't show those things at settlement? We don't know what she showed at settlement because there's no evidence in the record of it. We have no idea what the title agent had. So let's assume for a minute that, and I know you see, you don't see the facts this way, but let's assume that Ms. Fields had a prior mortgage within three years. Let's assume that there was no change in ownership in the property and let's assume that the meets and bounds of the property did not change. She would have won at trial at the bankruptcy court if she had just walked with the evidence showing those three things. I think so. And I think if she'd shown that, I think it's safe to assume she probably would have gotten the refinance rate as well. You can easily assume that. Well, but now you're saying that she needs to show those things before closing. Correct. Well, I'm not with you there. On trial, I think I'm with you. I mean, you got to prove up your case. And I think you answered the question. If she showed those things at trial, she wins the case. But your argument is she didn't show those things at trial. That's correct, Your Honor. OK. Can I ask a question about the effect of the rule that is being urged? And I'm not sure that the amicus and Mrs. Field's lawyer are entirely on the same page on this. But for purposes of this argument, let's say that the argument that's being pressed on us is that this is a strict liability statute and that it doesn't make any difference what the lender knew or didn't know. If the wrong charge is in there for title insurance and that takes you over the HOPA limit, that's game over liability to the lender. What's the practical consequence of that to lenders like your client? Well, it clearly increases exposure to lenders. I don't think there's any doubt about that. Is there a Truth in Lending Act class action in there someplace? I mean, what would happen? That's what I'm trying to figure out. If you've thought about it. If you haven't thought about it, that's fine. I haven't really thought that through. I will know that when you read the strict liability cases, such as the Tomka case, which is cited in the appellate's brief, which I don't think applies at all because it relates to automobile leases. You have to still have a proven violation to impose strict liability. The cases say that and we don't have a proven violation here. I'm confused. You're talking about what she would have to prove at trial and if she could prove these things at trial, she would win and get the refinancing rate. But you see, the trial is in the bankruptcy court after she's been forced into bankruptcy because the disclosures weren't made at or before the closing. She was paying the higher rate because three days before the closing, she did not know or was unable to prove the three requisites that she could prove now that she's in bankruptcy court, which she shouldn't have been in the first place. Everyone's looking at knowledge at the time of the trial. I am looking at who has the burden to make those disclosures or to find out what her rights are or whatever it is. It should have been done at or about the time of closing. Can you address that? Sure, Your Honor. And the answer is there's no record of any of that. We don't know. Well, there is a record. I sound like a broken record with the two previous mortgages. Correct. There are two previous mortgages. So that's the lender who was not at the table but the only defendant here. I suppose we have to look to it. She, at least one could say, made a color of a claim that that disclosure should have been made to her or for them to investigate further to see whether or not the, whether the way, the basic rate was unreasonable. Your Honor, I, a couple of things.  she had a mortgage broker and she had a mortgage broker the mortgage broker represents the borrower. The mortgage broker is a specialist in the mortgage industry and is supposed to know these things. That's his or her job to advise the borrower. See, we don't have a mortgage broker before us. We don't have the title company before us. The bankruptcy judge never discussed strict liability. Yeah, here, you know, I don't want to, I certainly don't want to put the words in the mouth of Mr. Schell and Mr. Trouse, but sort of the gist of the argument I'm getting from them is that the Truth in Lending Act and HOPA are meant to protect people like Mrs. Fields from lending practices that would put them in a position where a 79-year-old woman is given a 30-year fixed mortgage for $83,000, the payments for which will amount to roughly half her monthly income at an annual percentage rate of over 10%, and that, you know, if lenders are going to make loans like that, then there ought to be some interpretation of the statute that makes them feel the bite. Are they wrong in urging us to view the statute as some protection for people like Mrs. Fields who are, you know, you gave her this loan within a year and a half, she's in bankruptcy? I think there's some justifiable sense of the public interest being ill-served. What's your response? Granted, it's an emotive argument more than an argument pinned to the statute, but we need to be looking at the purpose of the statute. What's your response? Option one certainly takes the Truth in Lending Act very seriously, and we agree with what the policies are behind the Truth in Lending Act. We discussed those in our brief, but I don't think we're here to address the larger social issues for which there's no evidence in the record. There could have been expert testimony about it. It's not there. I would also add that if it is too risky for lenders to make loans of this nature, they won't occur at all. That's what would happen. You would kill the market for this. There's no doubt Mrs. Fields, from what I know off the record, had a difficult situation. I don't know, and it's certainly not in the record, what caused her to file for bankruptcy. We don't know. We don't know if it was this or some other circumstance. She could have been having problems which is what motivated her to refinance. I don't know. We simply don't know, Your Honor. Mr. Ford, I want to quote something to you from the district court's opinion. The district court wrote, and this is at page 18 of your brief, quoting the district opinion at seven. Fields cannot meet her burden because she cannot remember any substantive details of any relevant loan transaction, and the record does not reveal that Fields produced any evidence of her title insurance at the time of the closing. Yes. So the district court is saying she had an evidentiary burden at the time of closing. Now, a few minutes ago, I asked you the question of whether, if at trial, she came forward and showed the three requisites that she would win, and you said yes. Correct. That's inconsistent with the standard that the district court applied because the district court says she loses, she's out of court because she didn't produce this evidence at time of the closing. Didn't the district court necessarily err in that regard? I don't know the answer to that, but obviously, Your Honor, if she wanted to get the refinance rate, there had to be some information available at closing for her to get that. But isn't that the whole point of Tila? Tila says borrowers... I don't know what a refinance rate is, and I'm going to assume that I'm a little more knowledgeable in the ways of real estate than Mrs. Fields was when she showed up for a mortgage. And if people who have been educated in the law don't go to closing mindful of whether they're entitled to the basic rate or the reissue rate or the refinance rate, how can we expect Mrs. Fields to be? And isn't the point of Tila to say the onus is on the lender to make sure that people are charged the rate to which they are entitled? And if they're not, after the fact, if some smart lawyer tells them they get overcharged, they can walk into court and say, give me my money back. Well, the title company is the one who charges for the title insurance and selects and purchases the title insurance. But whom does the federal law hold liable when the wrong, when an overcharge occurs, doesn't federal law hold the lender liable? No, only if there's not a disclosure. In other words, if there was no, but there should have been a disclosure. If you accept my premise that she was entitled to the refinance rate, then there should have been a disclosure. If she was entitled and she could prove that, then there should have been a disclosure of the over amount, the 211. So she had to prove all of this before the closing or at the closing, because that's when the rate went into effect. Right? Yeah, yeah. She would have had to make some, she would have had to give some information. Now, Judge Fox doesn't say that. Who requires her to do that? I mean, your brief, I thought, I mean, quite honestly, I thought it was very persuasive when I first read it. But because you rely upon the burden that is found in 5.3 of the manual, right? And you rely on the Stump case. You rely on Ricciardi, right? Correct. Okay. And Glauser and some of the other ones. Right. And you rely on Ricciardi because the holding in the non-presidential opinion in Ricciardi suggests that there's an evidentiary burden in the case of a refinance, right? Correct. Of a refinance. Oh, no, refinance. That's what Ricciardi said. That's what we said in our non-presidential opinion in Ricciardi. But when you look at what the district court did in Ricciardi, it's not a 5.6 case, is it? It's a 5.3 case. Reissue case. Well, I think, I think they use the word refinance and reissue in that. And the district court? I'm sorry, I might be confusing it with another decision, but I think that there was a mention of refinance and the reissue. And then stop is a district court case that relies on Ricciardi, right? The Eastern District says, Ricciardi tells us that that you need to come forward with evidence prior to the closing that you satisfy the three requisites or you don't get the refi rate. Correct. The problem is Ricciardi is a house built on sand, isn't it? I'm sorry. I don't understand the question. You're right. I know it's not. It's it's it's. It's like, I mean, I guess I'm I shouldn't ask you the question. You've you've acknowledged you're not familiar with what the district court said in Ricciardi. Well, I can easily quickly find out. Well, I guess my question would be show me in the district court opinion in Ricciardi  case under 5.6 as opposed to a reissue case under 5.3. May I indulge the court for a moment? Yeah, thank you. I think it's time to pull the plug. Yeah, I'm sorry. Yeah, I'm sorry. I'm going over here. I'm going to sit down. Any? Yeah. But that's where you went from a green room, right? Oh, I'm going to pull the plug.  to his two minutes. Yeah, yeah.      I don't know what he's doing. I just discovered that. I think we can we can establish. You know, I don't want to Mr. Ford for relying upon a non-presidential opinion of this court. But my question is really intended to. To ascertain whether well, whether that NPO is worthy of the support that you give it, because as I read it, 5.6 was not an issue in the district court in the Ricciardi case. Well, my memory was better than I thought, because the district court does say Planoff was not entitled to a reissue or refinance rate because he did not provide evidence of a prior title policy to Ameriquest. But you don't need it under 5.6. And that's that's kind of our point here. Based on what the language of the manual says. All right, OK. We understand your argument. I think I understand all of the arguments, but I'm not sure. But we'll sort through it Difficult stuff. Thank you, Mr. Ford. Mr. Shaw, rebuttal. Two minutes. We'll hold you to it. Now, just to see your honor, I think I turn, I guess, back to what I thought was, I guess, the simple reasoning of Judge Vanden Heuvel at the time in the Johnson case, which is what we think should have been the reasoning here and what the court ruled in Johnson is they looked at whether the rates reasonable or not. They said that, of course, title insurance doesn't have to be in the finance charge unless it's not reasonable. The court simply looked at the title of the manual and said this transaction was within three years. There was a prior transaction within three years. Therefore, the refinance rate applies. He found as a matter of law. I was kind of surprised at that. Did you prove those things at trial? Well, in the Johnson case, didn't have a trial. No, no, in this case, in this case, your position, the bankruptcy judge didn't give you a chance to prove that those things existed at trial because of what I read and challenged your adversary with that the bankruptcy judge was fixated on what Mrs. Fields failed to produce at closing. I think that's right. He was not fixated on the correct issue. As far as trial, I really don't think there was any dispute that we showed that there was an insured transaction within three years and nobody was suggesting that Mrs. Fields' title changed or that the ownership changed. This is fairly clear that all those requirements were met. And what happened is the court added, and I think correctly, incorrectly again, added some of the requirements of 5.3, which don't have anything to do with this case. And Judge Bardo, clearly on the last page, that's all he's talking about is 5.3. In terms of an opinion here, the manual has now been amended so that 5.3 and 5.3, there is now a requirement under 5.6 of production. Doesn't say who produces, but it's the same requirement. It's actually meant to ease the burden for the consumer. It's actually meant to ease the burden for the consumer. It's meant to have the title companies take a look at anything. But it doesn't say there's a burden on the title company. It doesn't say there's not a burden on the consumer. I'm just saying, are we dealing here with a gap? In other words, if to the extent we would rely on what 5.6 does not say or did not say at the time of this loan, are we only dealing with the gap until August 2005 when the manual was amended? To a certain extent, that is correct, Your Honor. The later cases that we've had when the incorrect charges are being made, they haven't even really contested when they're wrong. We just won a case before Judge Fulham on that issue. Now, he held in that case that we lose because in that case we had to show that the finance charge was outside of the tolerance. It wasn't a HOPA issue as here. There's no tolerance issue at all. You still have the burden of proof issue which would exist even post amendment. To some degree, yes. We will take the case under advisement. Clerk will adjourn court.